Estate of Theresa M. Drew, Deceased, John S. Drew, Executor v. Commissioner.
Estate of Theresa M. Drew v. Commissioner
Docket No. 26445.
United States Tax Court
1951 Tax Ct. Memo LEXIS 10; 10 T.C.M. (CCH) 1228; T.C.M. (RIA) 51362; December 26, 1951
Edwin E. Grant, Esq., 506 Flatiron Bldg., San Francisco, Calif., for the petitioner. Robert G. Harless, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent has determined a deficiency of $14,282.89 in the estate tax of the estate of Theresa M. Drew, deceased, and by an amended answer filed at the hearing has asked that the deficiency be increased by $1,700. Issues raised by the pleadings are whether the respondent erred (1) in including in the decedent's gross estate one-half of the value of certain community property acquired by the decedent and her surviving husband prior to July 29, 1927, (2) in including in the decedent's gross estate one-half of the value of certain community property acquired by the decedent and her surviving husband *11 after July 29, 1927, (3) in including in decedent's gross estate only one-half of the value, instead of the full value, of sixty-four shares of stock in, and of eight debentures of, American Telephone and Telegraph Company, (4) in determining the value of certain corporate stocks owned by decedent at the time of her death, (5) in including in the decedent's gross estate the amount of an income tax refund for the year of her death, and (6) whether the petitioner erred in reporting as part of decedent's gross estate certain real property located in San Mateo County, California. The petitioner concedes issues Nos. (4), (5) and (6), thus leaving for determination only issues Nos. (1), (2) and (3) of which No. (3) was raised by respondent's amended answer. Findings of Fact A portion of the facts have been stipulated and are found accordingly. Theresa M. Drew died testate and a resident of San Francisco, California, on September 12, 1945. She was survived by her husband, John S. Drew, and their three adult children. John S. Drew is the duly qualified and acting executor of her estate. The estate tax return for her estate was filed with the collector for the first district of California. *12 The decedent and John S. Drew were married on October 18, 1899, and from that date until her death they resided continuously in California. During that period they acquired property in which each had a community interest, some of which was acquired prior to 1923, some between 1923 and 1927 and the remainder subsequent to July 29, 1927. In addition the decedent owned a substantial amount of separate property. The estate tax return for the decedent's estate, which was filed on November 27, 1946, disclosed a gross estate of $77,225.25, deductions of $4,870.90 and an estate tax liability of $758.99. The properties whose values were included in computing the gross estate consisted almost exclusively of decedent's separate property. In determining the deficiency herein the respondent determined that the decedent's interest in Lot 13, Block 4, which was included in the estate tax return under Schedule A designated as "Real Estate" at a value of $1,000, had a value of $2,500 at the date of death of the decedent. This property was acquired on October 25, 1920, and was held by John S. Drew and the decedent as tenants in common. In determining the deficiency the respondent also determined *13 that the following properties were nominally held in joint tenancy, that no value therefor had been included in the estate tax return and that the decedent's interest therein was includible under Schedule E of the return designated as "Jointly Owned Property" at the indicated values: Value
Lot No. 1, Broderick Street, value
$10,000, 1/2 interest
$ 5,000
Lot No. 2, California Street, value
$15,000, 1/2 interest
7,250
Residence, Pacheco Street, value $19,050,
1/2 interest
9,525
64 shares Amer. Tel. and Tel. Co. stock
at $175 per share, $11,200, 1/2 interest
5,600
8 Amer. Tel. and Tel. Co. debentures at $100 each, $800, 1/2 interest
400
Total
$27,775
The respondent further determined that the following properties were community properties, that no value therefor had been included in the estate tax return, and that the decedent's interest therein was includible under Schedule F of the return designated as "Other Miscellaneous Property" at the indicated values: Value
Drew School, Personal Property and In-
tangible Assets. Value $45,300, 1/2
interest
$22,650
Lot No. 3, California and Broderick
Streets, Value $18,700, 1/2 interest
$ 9,350
Lot No. 4 Broderick Street, Value
$14,000, 1/2 interest
7,000
Total
$39,000
*14 The principal source of income of the decedent and her husband was the Drew School, located at the corner of California and Broderick Streets in San Francisco. Drew School is a private institution which is accredited by various universities and specializes in preparing prospective appointees to the several military academies. John S. Drew started the school in 1908 and at its inception he was the only instructor. The school's activities were conducted in rented premises until 1924. Lot No. 3, California and Broderick Streets, represents the land and building which houses the Drew School. This property was purchased by John S. Drew on February 16, 1924, and title was taken in his name. The consideration was $15,000 of which $6,500 was paid at the time of the purchase and the remainder of $8,500 was represented by a promissory note secured by a mortgage on the property. The note was paid in full on March 5, 1929. Lot No. 4, Broderick Street, improved with a building used as a boarding house for students of Drew School and adjacent to Lot No. 3, was acquired on or about April 20, 1925, at an undisclosed price. A down payment of an undisclosed amount was made at the time of purchase *15 and the balance was paid in monthly instalments over an undisclosed period from current income. Title to the property was taken in the name of John S. Drew and Theresa M. Drew, his wife. Lot No. 2, California Street, a vacant lot adjacent to Lot No. 3 and used as a playground for Drew School, was purchased on or about April 20, 1925, for $7,500. An undisclosed portion of the purchase price was paid at the time of purchase and the balance was paid in instalments over an undisclosed period from current income. Title to the property was taken in the name of John S. Drew and the decedent as joint tenants. Lot No. 1, Broderick Street, adjacent to Lot No. 4 and improved with a three-story frame flat, was purchased by John S. Drew and the decedent on September 30, 1937, for $5,000. This property was devoted to rental purposes and wa not used for school purposes. On or about June 17, 1924, John S. Drew purchased forty shares of the capital stock of the American Telephone and Telegraph Company at a cost of $5,072.80. He paid for the stock with funds derived from Drew School and had it issued in the decedent's name because of his desire that she have the stock and the enjoyment thereof. *16 The only separate property of importance owned by the decedent at that time was a house and lot in San Francisco designated as Pierce Street Property which had been presented to her as a gift by her brother. As a result of the exercise of stock rights additional shares were acquired and issued in the name of the decedent as follows on the dates and at the costs indicated: April 1, 1927, seven shares for $700, April 1, 1929, eight shares for $800, April 2, 1931, nine shares for $900. The funds to purchase the additional shares were derived from Drew School. At some time subsequent to the acquisition of the stock Drew acquired the belief that the stock was held in joint tenancy by him and the decedent and that belief was removed only by the receipt of advice from the American Telephone and Telegraph Company on the date of the hearing of this proceeding that the stock was and always had been held in the name of the decedent. In her will the decedent described the stock as community property of herself and Drew and provided for disposition of her interest in it as community property. Drew made a gift to the decedent of his community interest in the stock and it was her separate property *17 at the time of her death. Prior to July 29, 1927, the only income received by John S. Drew was from Drew School except for a period of thirteen years ending in 1925, when he was principal of Humboldt Evening High School. For his services as principal he received a salary which was increased over the years to a maximum of $2,000 annually. John S. Drew and the decedent maintained separate bank accounts. He deposited in his account without any segregation or earmarking thereof receipts from Drew School and his salary received as principal of the Humboldt School. He drew upon the account for expenses relating to Drew School and for personal expenses of himself and family, including the education of his children and travel to Europe. Because of the practice so followed, identification cannot now be made of any money expended in 1924 or later as being salary earned by him or as community funds accumulated in 1923 or earlier. His bank account shows gross monthly deposits and a balance at the end of each month for the years 1923, 1924, 1925 and 1927, as follows: 1923
1924
1925
End
End
End
Gross
of Month
Gross
of Month
Gross
of Month
Deposits
Balance
Deposits
Balance
Deposits
Balance
Jan.
$4,127.62
$2,332.81
$ 5,176.39
$2,100.98
$ 7,433.31
$2,244.77
Feb.
4,679.95
849.29
6,664.95
867.24
5,940.27
1,635.36
March
3,561.23
776.16
4,148.92
652.40
5,722.59
2,538.38
April
4,775.84
1,096.68
4,152.15
363.93
Unknown
2,370.14
May
3,857.19
1,418.11
5,100.95
51.26
19,426.73
1,186.03
June
4,504.48
972.68
10,494.18
442.35
5,225.92
2,271.47
July
5,684.32
1,656.38
4,961.92
32.61
5,302.03
2,049.96
Aug.
5,482.15
1,809.60
6,132.06
1,067.49
7,633.79
4,789.48
Sept.
4,361.27
1,753.96
5,398.05
1,547.30
5,421.40
3,231.00
Oct.
4,770.33
2,524.91
10,541.99
2,450.16
Unknown
2,299.41
Nov.
3,510.17
781.71
4,406.75
2,613.12
4,792.23
816.4617
Dec.
3,811.48
879.30
Unknown
949.58
Unknown
Unknown
*18 1927
End
Gross
of Month
Deposits
Balance
Jan.
$6,856.64
$2,441.95
Feb.
5,292.09
2,993.78
March
5,844.76
2,201.44
April
9,247.92
487.30
May
5,532.93
1,431.81
June
4,751.85
439.07
July
4,078.27
993.69
Aug.
8,006.29
2,776.08
Sept.
5,072.74
3,067.08
Oct.
5,033.36
3,754.04
Nov.
5,362.87
3,957.17
Dec.
4,013.70
657.91
The decedent executed her will in 1942 and it was admitted to probate on February 4, 1946. Her estate was distributed in accordance with the provisions of her will. Opinion On the ground that Lot 13, Block 4, Drew School, personal property and intangible assets, Drew School building (Lot No. 3), Drew School boarding house (Lot No. 4), and Drew School playground (Lot No. 2) constituted community property acquired prior to July 29, 1927, the petitioner has assigned as error the respondent's action in including in the decedent's gross estate the values determined by him for the decedent's interest therein at the date of death. As to the respondent's inclusion in the gross estate of the values determined by him for the decedent's interest at date of death in the Pacheco Street residence (only $3,500 of *19 the included value being contested), the Broderick Street flat (Lot No. 1) and the eight debentures of American Telephone and Telegraph Company, the petitioner has assigned error on the ground that those properties constituted community property acquired subsequent to July 29, 1927, with money received by Drew as compensation for personal services actually rendered by him or with money derived originally from community property acquired prior to July 29, 1927. In its reply brief the petitioner states that it is not further contesting the respondent's action as to the controverted amount of $3,525 with respect to the decedent's interest in the Pacheco Street residence. Accordingly, the respondent's action as to that item is sustained. The petitioner contends that the decedent had no vested interest in the controverted properties acquired prior to July 29, 1927, when the community property law of California was changed so as to give a present one-half interest in community property to the wife, and that, therefore, no part of the value of such properties is includible in her gross estate. The respondent contends that the petitioner's position can not be sustained in view of the provisions *20 of section 811 (e) (2) of the Internal Revenue Code as amended by section 402 of the Revenue Act of 1942. [1]
While section 811 (e) (2) provides certain *21 exceptions to its general application, it is to be observed that these exceptions are not effective in all instances where the factual situations covered therein may be present. As indicated by the language contained in the last sentence of the section, as well as by the Congressional Committee Reports [2] relating thereto, the exceptions are subject to the provision that in no case shall the value of the property included in the gross estate of the decedent be less than the value of such part of the community property as was subject to the decedent's power of testamentary disposition. Consequently, if a wife who predeceases her husband may dispose by will of one-half of the community property her estate is taxable with respect to one-half of the community property even though the community property was derived originally from the husband's compensation for personal services actually rendered, or from his separate property, or both. Where the deceased wife had the power of testamentary disposition of community property, the source from which the property was derived has no significance. *22 Contending that under California law the decedent had power of testamentary disposition of her interest in the properties acquired between 1923 and July 29, 1927, the respondent urges that his action as to them should be sustained. In Estate of Selina J. Gray, 14 T.C. 390, we considered the question of the wife's rights under the law of California respecting community property acquired both prior to and subsequent to July 29, 1927. We found that the change in the law effective July 29 1927, whereby the wife was given a present one-half interest in community property was prospective in effect and that as to such property acquired prior to the effective date of the change the wife had no vested interest but only an expectancy. However, we also found that by an amendment to the law, effective August 16, 1923, the wife was given the power of testamentary disposition over half of the community property if she predeceased her husband. This amendment was also prospective in effect and was found not to apply to community property acquired before August 16, 1923, or to income therefrom or investments thereof because of rights acquired with respect thereto by the husband under *23 prior law. In the light of the foregoing it is apparent that the decedent had power of testamentary disposition over one-half of the community property acquired between August 16, 1923 and July 29, 1927, unless it represented an investment of community property acquired prior to August 16, 1923, or the income therefrom. To bring the controverted properties within this excepted class the petitioner urges that the properties were acquired with money accumulated by Drew prior to August 16, 1923 from Drew School and from compensation received as principal of Humboldt School and were acquired further by income received after August 16, 1923 from Drew School, which school it is claimed was community property acquired prior to August 16, 1923. The only income Drew appears to have had prior to July 29, 1927, was the earnings of Drew School and his salary from Humboldt School. According to his testimony these were so intermingled in his one bank account that neither could be identified as having been used for any of the various purposes, including family expenses, education of his children and travel to Europe, for which he made withdrawals from the account. The record does not show the *24 amount of the balance in the account on August 16, 1923. However, it does show that at the close of July 31, 1923, the balance was $1,656.38, that during August 1923 gross deposits were $5,482.15 and the balance at the close of the month was $1,809.60. Those amounts indicate that withdrawals during August were approximately $5,230, or more than three times the balance at the beginning of the month and almost three times the balance at the end of the month. With that information and nothing more we are unable to find that the balance in the account on August 16, 1923, was anything more than nominal. Since the evidence fails to show that Drew had accumulated more than a nominal sum on August 16, 1923, we are unable to find that any accumulation of money on that date was used to purchase any of the controverted properties. So far as the record shows Drew School building (Lot No. 3), which was purchased on February 16, 1924, at a cost of $15,000 with a down payment of $6,500 and a note and mortgage given for the balance of $8,500, was paid for out of income from Drew School. While the evidence relating to Drew's bank account indicates that it was possible for the $6,500 to have been *25 paid from the account and, therefore, was from income received sometime during the period between August 16, 1923 and the purchase date, February 16, 1924, the record is entirely silent as to what portion, if any, of the balance of the purchase price was paid from income received prior to July 29, 1927. All we know is that the note and mortgage given for the balance were paid in full on March 5, 1929. Whether several payments were made over the period between February 16, 1924 and the date when paid in full or only one payment was made, we do not know. In this situation we cannot conclude that any payment after the $6,500 was from income received prior to July 29, 1927. Drew School boarding house (Lot No. 4) was purchased on or about April 20, 1925, at an undisclosed price with a down payment of an undisclosed amount and the balance was paid from current income in monthly instalments of an undisclosed amount extending over an undisclosed period. On or about April 20, 1925, the Drew School playground (Lot No. 2) was purchased for $7,500, with a down payment of an undisclosed amount and the balance was paid from current income in instalments of undisclosed amounts over an undisclosed *26 period. While some portion of the purchase price of these properties was from income received prior to July 29, 1927, the evidence fails to show whether the entire price was paid from that source or whether some portion was from income received after July 29, 1927. Since some of the income from Drew School received during the period between August 16, 1923 and July 29, 1927 was used in the purchase of properties it becomes necessary to determine whether Drew School constituted community property acquired prior to August 16, 1923. The school was started by Drew in 1908 and was conducted in rented quarters until 1924. The record does not show that prior to the purchase of the school building (Lot No. 3) in February 1924, any tangible property, either separate property of Drew or of the decedent or any of their community property, was employed in the operation of the school. So far as disclosed Drew merely rented furnished premises, employed such teacher and other help as he needed and financed the operation of the school out of current receipts. If at August 16, 1923, any intangible in the nature of good will was associated with the school there is nothing to indicate that it existed *27 independently of Drew personally, or to what extent, if any, it was productive of community income in 1923 and 1924 or in later years. In this state of the record we are unable to conclude that Drew School constituted community property acquired prior to August 16, 1923. Accordingly, it is our conclusion that the income from Drew School which was used to acquire the properties in 1924 and 1925 was not from community property acquired prior to August 16, 1923, and that decedent's community interest in such properties was subject to her power of testamentary disposition. By amended answer the respondent alleged that the correct value of the decedent's interest at date of death in Drew School playground (Lot No. 2) was $7,500 instead of $7,250 as determined by him in determining the deficiency. Since the correctness of the higher value is admitted by the petitioner in its reply, that value will be used in a recomputation of the deficiency. The record shows that Lot 13, Block 4 was acquired on October 25, 1920, and was held by Drew and the decedent as tenants in common. However, nothing is shown as to the manner of acquisition or the source of the funds with which it was acquired. *28 Since the decedent's interest in the property was that of a tenant in common and not a community interest and had been owned by her since October 25, 1920, we find no basis for reversing the respondent's action as to this property. Taking the position that the Broderick Street flat (Lot No. 1) which was acquired in September 1939, and the American Telephone and Telegraph Company debentures which were acquired on some undisclosed date were acquired with money derived from the operation of Drew School after July 29, 1927, the petitioner contends that the properties were acquired with money received by Drew as compensation for services actually rendered by him or with money derived from community property acquired prior to July 29, 1927. The petitioner's contention as to these properties is subject to the same infirmity as in the case of its contention with respect to the properties acquired between August 16, 1923 and July 29, 1927, namely, that the decedent's interest in such properties was subject to her power of testamentary disposition. Since the properties acquired after 1927 did not represent the investment of any community property acquired prior to August 16, 1923, or the income *29 therefrom, the decedent had the power to dispose of a one-half interest in them by will as a result of the change in the law effective August 16, 1923. Furthermore, there appears to be an additional reason for holding against the petitioner's contention. Under the law of California in effect prior to July 29, 1927, the earnings of a husband in that state had substantially all the characteristics of separate property. Devlin v. Commissioner, 82 Fed. (2d) 731. However, by reason of the change effective July 29, 1927, his earnings constituted community property in which the wife had a vested one-half interest. United States v. Malcolm, 282 U.S. 792. Consequently, one-half of any portion of the income from Drew School after July 29, 1927, which might properly be regarded as compensation for services rendered by Drew to the school, constituted property in which the decedent had a vested interest. In the absence of a showing that the funds used in acquiring the post-1927 acquired properties were not to the extent of one-half the cost thereof, property in which the decedent had a vested interest there would be no basis for reversing the respondent's action. *30 The respondent determined a value of $11,200 for the sixty-four shares of American Telephone and Telegraph Company stock and $800 for eight debentures of that company and included in the gross estate as the value of the decedent's interest therein one-half of the values so determined. By amended answer he claims that the full value of the shares and debentures should be included in the gross estate on the ground that these securities constituted the separate property of the decedent. Since no evidence was offered as to the manner in which the decedent acquired an interest in the debentures and since the respondent makes no contention with respect to the debentures on brief, we conclude that he has abandoned his claim as to them and, therefore, deny it. While the evidence shows the divergent views held at one time or another by Drew and the decedent as to how the shares of stock were owned, it clearly shows that the stock was originally issued to the decedent and always stood in her name and that Drew's reason for such issuance and holding of the stock was his desire that she have it and the enjoyment thereof. Since Drew's action and motive are incompatible with the view that the *31 stock was acquired for the benefit and enjoyment of anyone other than the decedent, we have concluded and found as a fact that he gave her his community interest in the stock and that at the time of her death it was her separate property. The respondent's claim with respect to the stock is maintained. Decision will be entered under Rule 50. Footnotes
1. SEC. 811. GROSS ESTATE. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States - * * *
(e) Joint and Community Interests. - * * *
(2) Community Interests. - To the extent of the interest therein held as community property by the decedent and surviving spouse under the law of any State, Territory, or possession of the United States, or any foreign country, except such part thereof as may be shown to have been received as compensation for personal services actually rendered by the surviving spouse or derived originally from such compensation or from separate property of the surviving spouse. In no case shall such interest included in the gross estate of the decedent be less than the value of such part of the community property as was subject to the decedent's power of testamentary disposition.↩
2. Ways and Means Committee Report, House Report No. 2333, C.B. 1942-2, page 489; Committee on Finance, Senate Report No. 1631, C.B. 1942-2, page 674↩.